# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| PAMELA RODKEY and CHERIE CUMMINGS, on behalf of themselves and all other similarly situated employees nationwide, and on behalf of the Ohio and Oregon Classes, | Case No. 3:16-cv-311 |
| | Judge Thomas M. Rose |
| Plaintiffs, | |
| v. | |
| HARRY AND DAVID, LLC, 1-800-FLOWERS SERVICE SUPPORT CENTER, INC., and DOES 1-20, INCLUSIVE, | |
| Defendants. | |

---

### ENTRY AND ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE (DOC. 34) PURSUANT TO 29 U.S.C. § 216(b)

---

This case is before the Court on the Motion for Conditional Certification and Court-Supervised Notice (Doc. 34) filed by Plaintiffs Pamela Rodkey and Cherie Cummings.  Rodkey is a former employee of Defendant 1-800-Flowers Service Support Center, Inc. ("Service Support Center") and Cummings is a former employee of Defendant Harry and David, LLC ("Harry and David").  Both Service Support Center and Harry and David are subsidiaries of 1-800-Flowers.com, Inc.  Plaintiffs allege that they were denied compensation that they were entitled to under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, *et seq.*, due to Defendants' policy and practice of excluding incentive pay, commissions, and bonuses in calculating nonexempt employees' overtime compensation.  Plaintiffs assert class and collective

claims against Service Support Center, Harry and David, and several as-yet-identified Defendants (Does 1-20) for violations of the FLSA and Ohio and Oregon law.

Plaintiffs request an order conditionally certifying a collective action under the FLSA and authorizing notice to:

> All nonexempt employees who were employed by Defendants and paid overtime and incentive pay, commissions and/or other bonuses, within the past three years preceding the Complaint filing date.

(Doc. 34 at 1.) Fourteen individuals have already filed notices of their intent to opt-in to this action, if the Court certifies the proposed class. (Docs. 11-14, 16, 20, 29-30, 33, 35-36, 38, 41.) Defendants argue that conditional certification should be denied because the class is overbroad; Plaintiffs are not similarly situated to all class members; and Plaintiffs have not shown that Defendants shared an unlawful "common policy or plan." (Doc. 39 at 1.) For the reasons below, Plaintiffs have made the showing required to obtain conditional certification at this stage of the litigation. Accordingly, the Court **GRANTS** the Motion for Conditional Certification and Court-Supervised Notice (Doc. 34).

### I. LEGAL STANDARD

Congress enacted the FLSA "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945)). The FLSA establishes not only a minimum wage, but also requires employers to pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). In this case, Plaintiffs allege that Defendants did not calculate their overtime rate properly under the FLSA.

2

Section 216(b) of the FLSA allows employees to bring a collective action on behalf of themselves and other similarly situated employees to recover compensation from their employer. 29 U.S.C. § 216(b). A principal difference between a collective action and a class action certified under Fed. R. Civ. P. 23 is that class members in a collective action must "opt-in" to the litigation, whereas Rule 23 requires class members to "opt-out" if they do not want to be included.

The certification of a collective action is a two-step process: the first step, conditional certification, occurs at the beginning of discovery and the second step occurs "after all class plaintiffs have decided whether to opt-in and discovery has concluded." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (citing *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir.2006)). To obtain conditional certification, the plaintiff must "make a modest factual showing" that the employees in the proposed class are "similarly situated." *Comer*, 454 F.3d at 546-47 (citing 29 U.S.C. § 216(b)). This is a "fairly lenient standard" that "typically results in conditional certification of a representative class." *Id.* at 547. The district court typically should "refrain from resolving factual disputes and deciding matters going to the merits" at this stage. *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 53 (D.D.C. 2012).

At the second stage, courts apply a "stricter standard" and more closely examine "the question of whether particular members of the class are, in fact, similarly situated." *Id.* at 547. "[P]laintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). If the court determines at the second step that the plaintiffs are not similarly situated, it may decertify

the class.  At both the first and second step, the lead plaintiffs bear the burden of showing that they are similarly situated to the opt-in plaintiffs.  *White*, 699 F.3d at 877.

## II.    ANALYSIS

The Court's inquiry at this stage is limited to whether Plaintiffs have made a modest factual showing that they and the proposed class members are similarly situated.  Defendants argue that conditional certification is not appropriate because the class definition is overbroad and Plaintiffs have not shown that they are similarly situated to the class or that Defendants subjected class members to a common policy or plan in violation of the FLSA.  The Court addresses Defendants' overbreadth argument before turning to whether Plaintiffs have carried their burden to obtain conditional certification.

### A.  Whether the Proposed Class Is Overbroad

Defendants argue that the proposed class is fatally overbroad because it includes "an untold number of individuals who did not suffer any injury."  (Doc. 39 at 8.)  According to Defendants, the only way for the Court to determine who is in the class would be to conduct numerous individual inquiries into the details of each class member's employment.  (Doc. 39 at 8-10 (citing *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003); *Dinkel v. Medstar Health, Inc.*, 880 F. Supp. 2d 49 (D.D.C. 2012); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111 (N.D. Cal. 2011); Hatton v. Cablecom, LLC, 2015 U.S. Dist. LEXIS 88617 (E.D. Wis. July 8, 2015)).)

Plaintiffs define the class as all "nonexempt employees who were employed by Defendants and paid overtime and incentive pay, commissions and/or other bonuses, within the past three years preceding the Complaint filing date."  (Doc. 34 at 1.)  Defendants do not dispute that the employees who fall within this definition may be identified from Defendants' records.

4

Rather, Defendants argue that many of the putative class members were not injured by the alleged unlawful compensation practices.  Defendants reason that the FLSA requires employers to include commissions (or incentive pay or bonuses) in the calculation of overtime pay rates only when the commissions are applicable to the same period that the employee worked overtime.  The class, however, would include individuals who were paid commissions, incentive pay or bonuses for periods during which they did not work any overtime—so long as they were paid overtime for any period over the last three years.

Defendants also submitted a pay stub of a nonexempt Harry and David employee purportedly showing that the employee was properly paid overtime compensation.  (Doc. 39-1.)  Thus, Defendants also argue that the factual allegations underlying Plaintiff's claims are unfounded.

Plaintiffs counter that it is premature to determine whether every proposed class member has a valid claim against Defendants.  (Doc. 40 at 3.)  Plaintiffs further argue that the FLSA contemplates situations in which commissions are paid long after the period during which they were earned.  (*Id.* at 4 (citing 29 C.F.R. § 778.119).)  In such circumstances, the employer is permitted to initially pay overtime based on the employee's regular rate, exclusive of the commissions.  (*Id.*)  Then, once the commissions are paid, the employer is required to pay any additional overtime compensation owed to the employee based on an apportionment of the commissions over the period that they were earned.  (*Id.*)  Thus, if the class included only those employees who were paid commissions (or incentive pay or bonuses) in the same period that they were paid overtime, the class would be under-inclusive.  This is because some employees might have been paid commissions at a later date (when the employees did not work overtime) that should have been apportioned to an earlier period when they did work overtime.  Plaintiffs also note that the pay stub that Defendants submitted post-dates this lawsuit and, in any event, the Court should not consider arguments directed to the merits at the conditional certification stage.

5

Based on the limited record before the Court, the class definition is not fatally overbroad. The proposed class is ascertainable, *i.e.*, the parties can determine who is in and who is out of the class. The Court acknowledges the possibility that Defendants may later show that some would-be plaintiffs do not have a viable claim against Defendants. At this stage, however, there has not been a showing that the number of plaintiffs without claims will be so large or the process for determining which plaintiffs have viable claims will be so tedious that maintaining a collective action is not appropriate. Plaintiffs defined the class to include all employees affected by the Defendants' alleged error in calculating overtime compensation. A more narrow class definition would fail as under-inclusive—a more concerning issue, at this stage, since the purpose of an FLSA collective action is to allow "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" and facilitate the efficient resolution of common issues in one proceeding. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

### B. Whether Plaintiffs Are Similarly Situated To Proposed Class Members

Plaintiffs have met their burden of making a modest factual showing that they are similarly situated to the putative class members. Plaintiffs assert that, for each week that they worked, they were paid an hourly rate for non-overtime hours and a separate rate for their overtime hours. They allege that Defendants miscalculated the rate for their overtime hours by failing to include their incentive pay, commissions and bonuses in the calculation of their applicable base pay rate. Plaintiffs submitted declarations from eleven other Service Support Center and Harry and David employees. (Docs. 34-4 – 34-13.)[1] Like Plaintiffs, these employees also assert that they were paid one hourly rate for non-overtime hours and a different rate for

---

[1] In addition to the eleven employees who submitted declarations in support of Plaintiffs' motion for conditional certification, fourteen employees of 1-800 Flowers.com, Inc. or its subsidiaries have filed notice of their intent to join this litigation if it is certified as a collective action. (Docs. 11-14, 16, 20, 29, 30, 33, 35, 36, 38, 41.) Their declarations assert the basic requirements to become a member of the class, but do not contain information about their positions or responsibilities.

overtime hours, and that their employers miscalculated their overtime rate by failing to account for their incentive pay, commissions and bonuses.  (*Id.*)

Plaintiffs also present evidence that Defendants shared the same compensation policies and practices.  Plaintiffs allege that 1-800 Flowers.com, Inc. requires all of the employees at its subsidiaries to follow the policies and procedures in its Employee Handbook—portions of which Plaintiffs submitted with their memorandum.  (Doc. 21 at ¶ 13; Doc. 34-14.)  The Employee Handbook includes policy statements on employment classification and compensation for overtime hours.  (Doc. 34-14.)  The policy statements are not detailed, but they generally stand for the proposition that 1-800 Flowers.com, Inc. requires its subsidiaries to pay overtime compensation in compliance with the FLSA and state and local law.  (*Id.*)  The Employee Handbook supports an inference that—at some level—1-800 Flowers.com, Inc. set its subsidiaries' employee basic compensation policies, which would include those of Service Support Center and Harry and David.  This inference is further supported by the fact that both Service Support Center and Harry and David used the same payroll company.  (Doc. 32 at 2-3.)

The employee declarations also support the inference that Defendants shared common policies regarding overtime compensation.  The employees worked in a variety of positions for both Service Support Center and Harry and David.  Yet, they all assert the same basic facts—that the compensation that they were paid for overtime hours failed to take into account the incentive pay, commissions and bonuses that they were paid during the same period.  Thus, the miscalculation of overtime compensation was not unique to a particular position or Defendant.  The precise manner in which overtime was miscalculated is not alleged, but it could be inferred that Service Support Center and Harry and David made the same mistake as a result of a flawed compensation policy set by 1-800 Flowers.com, Inc.

7

Defendants argue that Plaintiffs and the putative class members are not similarly situated because they had "different job titles, with different responsibilities and different terms and conditions of employment."  (Doc. 39 at 12.)  Defendants also assert that the class members "were all subject to, and may have been eligible for, different payment programs from their respective employers."  (*Id.*)  Defendants claim that overtime compensation was calculated properly in some of these payment programs, thereby undercutting Plaintiffs' allegation that Defendants miscalculated overtime compensation for all nonexempt employees.  (*Id.*)

A review of Plaintiffs' declarations shows that members of the proposed class did, in fact, have different job titles and responsibilities.  These differences, however, do not defeat a finding that they are similarly situated at this stage.  Plaintiffs have shown that the class members are similarly situated as to the relevant details of their employment for purposes of the FLSA claim asserted—namely, that their overtime compensation was miscalculated due to the same policy or practice.  The argument that individual differences make this case unsuitable to proceed as a collective action are better suited to the second stage of certification.  *See Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 769 (N.D. Ohio 2015); *Ribby v. Liberty Health Care Corp.*, Case No. 3:13-cv-613, 2013 WL 3187260, at *2 (N.D. Ohio June 20, 2013); *Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 229 (D. Conn. 2012).

Defendants' argument that they did not miscalculate overtime compensation for some employees within the class goes to the merits of Plaintiffs' claims.  At this stage, the Court does not consider such arguments, but they may be relevant at the second stage of certification if they demonstrate that the case is unmanageable or ill-suited to proceed as a collective action.

8

### C. Plaintiffs' Proposed Notice

"The FLSA 'grant[s] the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'" *Heaps v. Safelite Sols., LLC*, No. 2:10-CV-729, 2011 WL 1325207, at *7 (S.D. Ohio Apr. 5, 2011) (quoting *Sperling*, 493 U.S. at 170).  Courts may facilitate notice to putative class members "so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Sperling*, 493 U.S. at 168–69.  Court-authorized notice of a collective action under the FLSA must be "timely, accurate, and informative." *Id.* at 172.  Once conditional certification has been granted, sending notice as soon as possible is important in an FLSA collective action because the statute of limitations continues to run until individuals affirmatively opt-in to the action.  *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 845 (S.D. Ohio 2013).

Plaintiffs submitted a proposed Judicial Notice of Lawsuit (the "Notice") with their motion for conditional certification.  (Doc. 40-1)  The Notice contains basic information about the lawsuit, who may opt-in to the lawsuit, and the timing and manner in which to do so.  Plaintiffs propose that the Notice be posted on Defendants' intranet site and sent to potential class members via email and United States mail.  Plaintiffs also request that putative class members be given sixty days to opt-in to the lawsuit.

In order to facilitate dissemination of the Notice, Plaintiffs request that Defendants be ordered to disclose the names and contact information for all putative class members.  (Doc. 34-1 at 16-17.)  Plaintiffs further request that, if Plaintiffs' counsel is notified that any of the notice and consent forms are returned as undeliverable because of an incorrect mailing address,

9

Defendants' counsel shall—upon request—provide Plaintiffs' counsel with the last known telephone number, date of birth, and last four digits of the employee's Social Security number, if available.  (*Id.* at 17.)

Defendants object to the Notice for several reasons.  First, they object to dissemination of the Notice by any means except ordinary United States mail.  Second, they object to the sixty-day notice period, arguing that forty-five days is more common and sufficient.  Third, Defendants argue that the content of the Notice is deficient in that it fails to notify individuals of their right to retain their own attorney and obligation to participate in discovery if they opt-in to the lawsuit.  Finally, Defendants object to Plaintiffs' request for information about putative class members as overbroad.  In light of these objections, Defendants request that the Court allow the parties thirty days to meet and confer on the notice and notification process if certification is granted.

The Court addresses each of Defendants' objections to the proposed Notice below.

### 1. Dissemination of the Notice

Defendants cite *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002) for the proposition that dissemination of notice electronically "could compromise the integrity of the notice process." *Id.* at 630.  The Court is not convinced that either intranet posting or email would create such a hazard.  Rather, as Judge Rice determined when granting conditional certification of another FLSA collective action before this Court, service of notice by mail and electronic means "advances the remedial purpose of the FLSA" because it "increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-CV-253, 2015 WL

853234, at *5 (S.D. Ohio Feb. 26, 2015). Defendants' objection to dissemination of notice via intranet posting and email is overruled.

### 2. Sixty Day Notice Period

Defendants argue that a forty-five day notice period is standard in FLSA cases, and that Plaintiffs have not provided sufficient reasoning to extend the notice period to sixty days. (Doc. 39 at 18.) Plaintiffs only note that this Court has approved of sixty-day notice periods in other cases. (Doc. 40 at 15 (citing *Swigart v. Fifth Third Bank*, No. 1:11-cv-00088-SJD (S.D. Ohio Sept. 7, 2011) at Doc. Nos. 41-42; *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-cv-02959-GCS-TPK (S.D. Ohio Oct. 6, 2016) at Docs. 28-1, 29).) In both of the cases cited by Plaintiffs, however, the Court merely approved the proposed notice agreed upon by the parties. Here, a forty-five day notice period should be sufficient, especially in light of the Court's approval of dissemination of the notice via intranet posting, email and United States mail.

### 3. Right to Retain Attorney and Participation in Discovery

Defendants argue that the Notice should inform putative class members that they have the right to retain their own attorney. In response, Plaintiffs revised the Notice to include the following statement: "If you choose to bring your own lawsuit, you have a right to choose your own counsel." (Doc. 40-1 at 3.) As Plaintiffs' revision resolves Defendants' objection, no further action is required.

Defendants also argue that class members should be notified that they may be required to participate in discovery. Plaintiffs respond that the FLSA does not require such information in a notice and that this Court has authorized FLSA notices without such language. Plaintiffs also argue that including such language could chill participation in these kinds of cases.

In the balance, notifying potential class members of their discovery obligations is warranted. Many people—if familiar with any type of class litigation—are familiar with class actions brought under Fed. R. Civ. P. 23. In Rule 23 class actions, such as those involving securities fraud or product liability, class members often do not participate in the litigation beyond reading the notice and mailing in a completed claim form. In a collective action, however, the likelihood that individual class members will be required to provide information or sit for a deposition is much greater. Potential class members are entitled to know that their involvement in the lawsuit is a real possibility. Moreover, the risk of chilling participation in the action can be mitigated by choosing language that describes class members' obligations without undue emphasis. Another court faced with this issue ordered the plaintiffs to add the following language to their notice: "While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court." *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 374 (N.D.W. Va. 2012) (quoting *Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819, 829 (E.D. Mich. 2009); *Russell v. Illinois Bell Tele. Co.*, 575 F.Supp.2d 930 (N.D. Ill.2008)). This language is also appropriate in this case. Plaintiffs are therefore ordered to amend their Notice to include it.

### 4. Plaintiffs' Request for Information About Putative Class Members

Defendants argue that Plaintiffs do not need all of the information about putative class members that they have requested. This argument does not make sense in light of the Court's rulings regarding dissemination of the Notice. Plaintiffs will need class members' names, email addresses and mailing addresses for that purpose. The other information requested is discoverable and its production now will contribute to the "just, speedy and inexpensive determination" of this action. Fed. R. Civ. P. 1. The Court further grants Plaintiffs' request for

additional information regarding class members for whom the notices and consent forms are returned as undeliverable due to an incorrect mailing address.

In sum, the Court approves the proposed Notice (Doc. 40-1), as revised to reflect the Court's rulings on Defendants' objections.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Conditional Certification and Court-Authorized Notice (Doc. 34).

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, June 7, 2017.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE